(173 App. Div. 506)

### FLOWER v. BUCK.

(Supreme Court, Appellate Division, Third Department. June 30, 1916.)

1. MASTER AND SERVANT &#9758;256(1)—INJURIES TO SERVANT—ACTION—PLEADING.

The mere fact that plaintiff in an action for personal injuries alleged and proved that he filed a notice such as would be required under the Employers' Liability Act (Consol. Laws, c. 31, §§ 200–204) does not serve to bring his case within the statute, unless the facts pleaded are such as to give him the benefit of that act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 809; Dec. Dig. &#9758;256(1).]

---

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. MASTER AND SERVANT ⟷258(3)—INJURIES TO SERVANT—ACTION—PLEAD-
ING—"DEFECTS IN WAYS OR WORKS."

The allegation that a garage floor was damp and greasy, necessitating
plaintiff's working on an automobile from above, and not underneath, in
which work he was injured, *held*, in an action for his injuries, not an al-
legation of any "defect in the condition of the ways, works, machinery
or plant, connected with the business of the employer," under Labor Law
(Consol. Laws, c. 31) § 200, as amended by Laws 1910, c. 352.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 818;
Dec. Dig. ⟷258(3).]

3. MASTER AND SERVANT ⟷88(1)—INJURIES TO SERVANT—RELATION—CAS-
UAL EMPLOYMENT—"SERVANT."

Where a mechanic was called in to fix an automobile for a few hours,
he did not become a servant, under the Employers' Liability Act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 151;
Dec. Dig. ⟷88(1).

For other definitions, see Words and Phrases, First and Second Series,
Servant.]

4. MASTER AND SERVANT ⟷278(1)—INJURIES TO SERVANT—ACTION—EVI-
DENCE.

Evidence, in action for personal injuries by mechanic, called by de-
fendant to his garage to fix a car, that the floor was wet and greasy, and
that defendant did not furnish a "creeper" or "lead light," *held* not to show
defendant's liability for the injury, caused by plaintiff's falling against
moving automobile machinery.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954,
957; Dec. Dig. ⟷278(1).]

Appeal from Trial Term, Rensselaer County.

Action by Henry R. Flower against William L. Buck. From a
judgment for plaintiff, and an order denying a new trial, defendant
appeals. Reversed, and new trial granted.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOOD-
WARD, and COCHRANE, JJ.

Eugene Bryan, of Troy, for appellant.
E. Deane Vincent, of Troy, for respondent.

WOODWARD, J. The complaint in this action alleges that on or
about the 3d day of February, 1914, at the city of Troy, while the
plaintiff was in the employ of the defendant, engaged in and about
the repair of a Stanley Steamer car, owned by the defendant, by di-
rection and order of defendant, in the exercise of due care and dili-
gence, and without any fault or negligence upon his part, plaintiff was
seriously and permanently injured by reason of the unsafe, unlighted,
greasy, oily, narrow, small, and unfit place provided for and in which
plaintiff was by defendant directed to work at the time of said in-
jury, and the failure and neglect of defendant to furnish and supply
plaintiff with necessary and usual appliances customarily employed
and in general use in the garage and automobile repair business, which
was a part of defendant's business, commonly known and called a
"creeper" and a "lead light"; the remainder of this allegation being
devoted to the description of a creeper and a lead light. This is fol-
lowed by an allegation that at the time and place the—

⟷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"floor or surface upon which said Steamer car was then placed, and at which said plaintiff was by defendant directed to work, was wet, dirty, greasy, and unhealthful, and by reason of such conditions then existing plaintiff refused to work upon said Steamer car by resting his back and body upon said wet and unclean floor, for the reason that said place was unfit, unsafe, and unhealthful place upon which to lie or rest, and was by defendant directed to work at said repair of said Stanley Steamer car by entering in the body or box of said car and lifting or raising two doors in the floor or bottom of said car, to make an opening or space in the floor of said car through which to work at and about the repairs of the engine and machinery of said Steamer car. * * * That while plaintiff was engaged at and about the work of repairing the engine of said Steamer car, in said crouched, cramped, stooping, and bending position, with plaintiff's left hand resting upon the upturned part of the door as aforesaid, which said upturned part of said door was resting back and upon the floor of said Steamer car, said left hand slipped upon the surface of a part of said raised door by reason of oil and grease coated and being thereon, which said oil and grease was and had been allowed to accumulate and remain for a long time prior to the happening of said injuries, thereby causing the body of the plaintiff to plunge and dip downward, and, by reason of the stooped, bended, and crouching position of the body of the plaintiff, with his legs straddled over and across the said opening in the bottom of the floor of said Steamer car, and the limited and narrow confines of the body or box of said Steamer car in the part thereof where the plaintiff was working, plaintiff was prevented and arrested from stopping the said downward movement of his body, and as a result of such downward movement plaintiff's right hand reached and came in contact with, and was thrust against and touched, the engine crank of said Steamer car at the place upon the engine of said Steamer car where the engine frame bolt entered into the comb in the crank shaft, and, while plaintiff's said hand was in said position, to become crushed, maimed, and parts thereof severed by the engine balance of said engine coming in contact with and meeting said engine crank in the operation of said machinery, causing the severance of parts of the second and third fingers of plaintiff's right hand, and pain and nervous shock, and plaintiff thereafter suffered," etc.

These allegations are followed by an allegation that a notice was served under the provisions of the Employers' Liability Act, and the case went to trial and was submitted to a jury, which has returned a verdict for $500, which the trial court refused to set aside. The answer put in issue the material allegations of the complaint, and the verdict rests substantially upon the testimony of the plaintiff, who is squarely contradicted by the defendant upon the most material points in the evidence, and ·the defendant is corroborated by a disinterested witness, who was present at the time of the accident, and who saw all of the surrounding facts, though he did not witness the immediate accident. The verdict is so clearly against the weight of evidence that it ought not to be supported here.

[1-3] The mere fact that the plaintiff alleged and proved that he filed a notice, such as would be required in an action under the Employers' Liability Act, does not serve to bring the case within the purview of that statute, unless the facts pleaded are such as to give the plaintiff the benefits of the act. There is no allegation in the complaint of any "defect in the condition of the ways, works, machinery or plant, connected with or used in the business of the employer" (section 200, Labor Law, as amended by chapter 352 of the Laws of 1910), by reason of which the plaintiff received any injury. The only defect suggested is that the floor of the garage was wet, dirty, greasy, and unhealthful; but the plaintiff himself declares that he recognized this

condition, and that he refused to work in such wet, dirty, greasy, and unhealthful situation, and as his employment lasted less than three hours, and he is not alleged to have contracted any disease, we may safely conclude that the alleged condition of the floor was not the proximate cause of his injuries.

The only other allegations of negligence are that the defendant then directed the plaintiff to enter the box or body of the car, and to perform his work from that point, and that the defendant failed to provide for him a "creeper" and a "lead light." The creeper, which is described in the complaint, is merely a board with a head rest, provided with small wheels, which enables the person making repairs from the underside of a car to get under the machine with greater ease than by crawling under, and it could not have any bearing upon this case, except that, if he had had this "creeper," he might possibly have performed his work from the underside of the car. But this was not a public garage. The defendant was engaged as a common carrier, using two automobiles, and the garage was used for storing his cars, and there appears to have been the tools and appliances for the ordinary incidental repairs; but the repairing of automobiles was no part of his business, for the evidence is uncontradicted that the only cars which were there, or which were in any manner repaired, were the two cars of the defendant, and it can hardly be seriously contended that the failure of the defendant to have a "creeper" in this private garage was in any proper sense a defect in the plant of a man engaged as a common carrier, making no pretense of catering to the public as an owner of a garage.

The plaintiff was called in, not to repair a car, but to connect up the steam apparatus of this particular car, such connections having been taken out in transporting the car, and the plaintiff was brought into the matter because he was familiar with the work, having previously been employed to drive it for the defendant. It was a mere special employment for a few hours in a particular piece of work, which the defendant could not do, and the relation of master and servant can hardly be said to exist in such a case, in the sense of the Employers' Liability Act. The plaintiff was more in the attitude of an independent contractor, and the absence of a "creeper" had no more to do with the accident than it had to do with the weather on that particular day. The fact that the floor was wet and dirty was entirely obvious; the plaintiff refused to work under those conditions, and he had an equal right to refuse to work under the other obvious conditions which surrounded him. He was not dependent upon the defendant for a job; his employment was only incidental, and he could have refused to do any of the work without any material loss to himself. No reason is suggested why he could not have wiped up the water from the floor, or why he might not have used a piece of plank, or resorted to any one of many expedients which an intelligent man could have devised to meet the situation, and so we may drop this feature of the alleged negligence. Reasonable care did not demand this "creeper" for a man who was temporarily employed in connecting up the steaming apparatus of this car, and, the plaintiff having

refused to work under the car, the absence of the "creeper" could in no proper sense be termed the proximate cause of the accident.

The absence of the "lead light," then, is the only other alleged negligence on the part of the defendant. This lead light is merely an electric light globe surrounded by a wire screen, and attached to an insulated wire of greater or less length, and is designed to enable the workman to reach dark spots in the car with a light. But the evidence is that this private garage was abundantly lighted; that another man who was engaged in making repairs upon the defendant's second car had plenty of light, and the plaintiff knew that he had no lead light. He was as free to decline to work without such a light, if such a light were necessary, as he was to decline to work under the car without a "creeper." It is entirely clear, from the complaint and the evidence, that the plaintiff, at the time of the injury, was reaching the operating parts of the car through the floor doors, which the manufacturer of the car had provided for this particular purpose, and there is no evidence in the case that the plaintiff could have reached the desired point in any other manner. The inference is sought to be carried, of course, that the plaintiff could have accomplished the work he had undertaken from the underside of the car; but there is no evidence from which this is a fair inference, and the effort of the pleading to hold the defendant responsible for the construction of the car, and for the doors and grease which is alleged to have accumulated upon them, is of the same general character of the case as a whole, which was evidently worked out in theory by a subtle mind. Certainly this plaintiff, who had driven this same car for three years, and who had connected and disconnected the steaming apparatus, was in a position to know what was necessary to reach the point of connection; the defendant knew nothing about the work to be done, and if more light was necessary he should have paused until he had such light. He had a lantern, but he tells us that the globe was dirty, and that it was not his job to clean the lantern, and so he goes into the working parts of this car, with the engine running—he himself having started the engine, so far as the record discloses—and is injured. He now seeks to charge the defendant with negligence because he did not have a particular kind of light.

[4] The proximate cause of the injury was not the lack of a light, nor was it the fact that the doors of the floor, which were opened to permit the work to be done, had in the natural order of things accumulated some grease. All of these things might have existed without material injury to the plaintiff. It was the fact that the engine was running, apparently serving no useful purpose, that produced the injury when the plaintiff's hand slipped, and the complaint does not charge, nor does the evidence show, that the defendant had anything to do with the starting of the engine. The complaint and notice of injury proceed upon the theory that the defendant did not provide the plaintiff with a safe place in which to work—a common-law, not a statutory, duty—and describe with much of minuteness the interior of this car box or body, with its opening to the working parts of the car as provided by the manufacturer, as though this were the place provided by the defendant. The place provided by the defendant was

the garage, and there is nothing to indicate that it was not a reasonably safe place for the plaintiff to perform the work of connecting up the steaming apparatus of the car described in the complaint. A practical steam motor car must, of necessity, present some difficulties in reaching and adjusting its steaming apparatus. It was a recognition of this fact which prompted the defendant to go to the plaintiff and ask him to perform the work, and the defendant was not bound to construct a car which could not involve the plaintiff in danger. The car was the thing to be adjusted. The plaintiff accepted the employment in the defendant's private garage, where there was no danger other than that connected with the practical task which he was called upon to perform, and the fact that the plaintiff started the engine, and while it was in motion undertook to do some work in connection with the adjustment, does not charge the defendant with liability for negligence under any rule which suggests itself to us.

We do not think the facts pleaded brought the case within the Employers' Liability Act, and at common law there certainly could be no liability under the facts which can by any reasonable intendment be deduced from the evidence.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.